## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 3:20-cr-00093-SMD |
| | ) |
| JOON LLC, d/b/a AJIN USA | ) |

## PLEA AGREEMENT

## I. BACKGROUND INFORMATION

### A.  Attorneys

Defense Attorney:                William Espy
                                 Melton, Espy & Williams, PC

Assistant United States Attorney:    Stephanie C. Billingslea
                                     Erica H. Pencak (U.S. Department of Justice Trial Attorney)

### B.  Count and Statute Charged

Count 1:    29 U.S.C. § 666(e) – Willful Violation Causing Death to Employee

### C.  Count Pleading Pursuant to Plea Agreement

Count 1:    29 U.S.C. § 666(e)

### D.  Statutory Penalties

Count 1:    A fine of not more than $500,000 (29 U.S.C. § 666(e); 18 U.S.C. § 3559(a)(7), 18
            U.S.C. § 3571(c)(4))

            A term of imprisonment of not more than six months (29 U.S.C. § 666(e))

            A term of probation of not more than five years (18 U.S.C. § 3561(c)(2))

            A special assessment fee of $50 (18 U.S.C. § 3013(a)(1)(B)(ii))

            Restitution is authorized (18 U.S.C. § 3663(a)(3))

## E.    Elements of the Offense

Count 1:    29 U.S.C. § 666(e)

|   |   |   |
|---|---|---|
| First: | The defendant was an "employer," within the meaning of 29 U.S.C. § 652(5); |
| Second: | The defendant violated an OSH Act standard or regulation promulgated pursuant to 29 U.S.C. § 665; |
| Third: | The violation was willful; and |
| Fourth: | The violation caused death to any "employee," within the meaning of 29 U.S.C. § 652(6). |

## II. INTRODUCTION

Stephanie C. Billingslea, Assistant United States Attorney, Erica H. Pencak, U.S. Department of Justice Trial Attorney, and William Espy, attorney for the defendant, Joon LLC d/b/a/ Ajin USA ("Ajin"), pursuant to Rule 11(c)(1)(A) and Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, with the authorization of the defendant, submit this plea agreement. The terms are as follows.

Because the count of conviction is a Class B misdemeanor, *see* 29 U.S.C. § 666(e); 18 U.S.C. § 3559(a)(7), the Sentencing Guidelines do not apply. U.S.S.G. § 1B1.9. The court is authorized to impose any sentence authorized by statute. *Id.* at Application Note 1.

## III. JOINT SENTENCING RECOMMENDATION

1.    The government and the defendant have agreed to the following sentence, which they will jointly recommend to the Court at sentencing:

a.  A fine of $500,000; and

2

   b. Restitution to the estate of the victim, Regina Elsea, in the amount of $1 million,
      representing lost earnings; and

   c. A three-year term of probation, to include as a special condition:

      i. Compliance with the attached Safety Compliance Plan.

## IV. THE GOVERNMENT'S PROVISIONS

2.    Pursuant to Rule 11(c)(1)(A), the government agrees that it will not bring any
additional charges against the defendant for the conduct described in the Information.

## V. THE DEFENDANT'S PROVISIONS

3.    The defendant agrees to plead guilty to Count 1 and to make factual admissions of
guilt in open court. The defendant further agrees to waive any right the defendant may have to
subsequently withdraw the guilty plea pursuant to Rule 11(d). The defendant also promises to
refrain from taking any action inconsistent with the terms of this agreement.

4.    The defendant understands that the defendant will be permitted to withdraw the
guilty plea in the event that the Court does not accept any or all of the recommendations made
pursuant to Rule 11(c)(1)(C). The defendant also understands that the defendant will be allowed
to withdraw the guilty plea in the event that the Court does not accept any or all of the provisions
set forth pursuant to Rule 11(c)(1)(A).

5.    The defendant agrees not to commit any other federal, state, or local offense while
awaiting sentencing, regardless of whether that offense is charged or chargeable. The defendant
agrees to provide truthful information to Probation and to the Court in all presentence and
sentencing proceedings.

3

6.      The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of the Court. The defendant acknowledges that the full fine and restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed under the supervision of Probation at any time, the defendant agrees that Probation will have the authority to establish payment schedules to ensure payment of the fine and restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off from federal payments, execution on non-exempt property, and any other means the government deems appropriate. The defendant also agrees that its owners or agents may be contacted by government officials regarding the collection of any financial obligation imposed by the Court without notifying the defendant's attorney and outside the presence of the defendant's attorney.

7.      To facilitate the collection of financial obligations imposed in this case, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a nominee or third party. Further, the defendant will, if requested by the government, promptly submit a completed financial statement to the Office of the United States Attorney for the Middle District of Alabama in a form the government provides and as the government directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful. The defendant expressly authorizes the government to obtain a report on the defendant's credit in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

8.      The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that

4

are created by this agreement or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

9.      The defendant agrees to pay the $50 assessment fee on the date of sentencing.

## VI. FACTUAL BASIS

10.     The defendant admits the allegations charged in the Information and understands that the nature of the charges to which the plea is offered involves proof as to Count 1. Specifically, the defendant admits that, at all times relevant to the Information, the following was true and correct:

a.      The defendant employed hundreds of workers at an auto-parts manufacturing plant located at 1500 County Road 177 in Cusseta, Alabama 36852 ("Facility"), including Regina Elsea ("Elsea"), who was a machinery operator in the Facility's production department ("Operator").

b.      Procedures designed to de-energize machinery to prevent it from starting up during maintenance and servicing activities were often referred to as lockout/tagout procedures, LOTO procedures, or LO/TO procedures ("LO/TO procedures").

c.      On or about June 18, 2016, while she was working in the production department at the Facility, Elsea entered an enclosure containing several robots and other pieces of machinery ("robotic cell") and attempted to troubleshoot a sensor fault on a piece of machinery that had stopped working, without following LO/TO procedures for the robotic cell.

d.      While she was inside the robotic cell, one of the robots energized and Elsea was struck by a robotic arm, which pinned her against another piece of machinery. Her co-workers freed her and performed first aid. She was transported to a hospital in Birmingham, where she died

5

from her injuries on or about the morning of June 19, 2016.

  e. The defendant was aware that it was required to utilize LO/TO procedures, but was also aware that employees were failing to follow these procedures and supervisors and managers were failing to enforce them, as evidenced by, *inter alia*:

    i. An October 9, 2014, email from the Facility's General Manager for HR & Administration warning defendant AJIN managers: "our employees are improperly locking out, not locking out or by-passing the lockout procedures when required to do so. … [S]ome of our management condones this practice and allows this behavior to go on without taking corrective action. … Lock-Out Tag-Out is one of the most important safety procedures that we, as a Company must follow to keep our employees safe." The email also warned about the safety risks of not following LO/TO procedures.

    ii. A November 17, 2015, email from the Facility's Safety Manager to defendant AJIN managers describing failure to follow LO/TO procedures as "an ongoing issue that has not been addressed by management."

    iii. A May 5, 2016, email from the Facility's Safety Manager warning defendant AJIN managers that employees were not following LO/TO procedures because "[c]ompliance is not being strictly enforced."

    iv. June 18, 2016, video footage from the 15 minutes prior to Elsea being struck by the robotic arm, which showed five other instances wherein Operators entered robotic cells attempting to troubleshoot (or assist in troubleshooting) sensor faults, without following LO/TO procedures. In each instance, a supervisor was present but did not attempt to stop or reprimand them. The video footage also showed that two supervisors (who had been

6

observing this behavior) entered a robotic cell to assist in troubleshooting without following LO/TO procedures.

11.    If proper LO/TO procedures had been utilized, the machinery in the robotic cell would not have been able to energize while Elsea was inside the robotic cell; she would not have been struck by the robotic arm and she would not have been killed.

## VII. THE DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

12.    Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the conviction or sentence. The defendant further expressly waives the right to attack the conviction or sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255. Exempt from this waiver is the right to appeal or collaterally attack the conviction or sentence on the grounds of ineffective assistance of counsel or prosecutorial misconduct.

13.    In return for the above waiver by the defendant, the government does not waive its right to appeal any matter related to this case, as set forth at 18 U.S.C. § 3742(b). However, if the government decides to exercise its right to appeal, the defendant is released from the appeal waiver and may pursue any appeal pursuant to 18 U.S.C. § 3742(a).

## VIII. BREACH OF THE PLEA AGREEMENT

14.    The parties agree that the issue of whether either party has breached this agreement at any time is one that will be resolved by the Court by a preponderance of the evidence, except as set forth in paragraph 16. The parties agree that, should either party obtain information causing the party to develop a good faith belief that the other party has breached this agreement, then the

7

party will promptly file a written motion—or make an oral motion if doing so would be more expedient—asking that the Court declare the other party to be in breach of the plea agreement.

15.    The parties agree that, a breach of the plea agreement by the defendant would include, but not be limited to: (1) failing to fulfill each of the defendant's obligations under this plea agreement; (2) committing new criminal conduct; or (3) seeking to withdraw the guilty plea or otherwise engaging in conduct inconsistent with the terms of this agreement.  Should the Court find the defendant to have breached this agreement: (1) the government will be free from its obligations under this agreement; (2) the defendant will not be permitted to withdraw the guilty plea; (3) the defendant's obligations and waivers under this agreement will remain in full force and effect; (4) the defendant will be subject to prosecution for other crimes; and (5) the government will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements by the defendant and any information or materials provided by the defendant, including statements made during the plea hearing and all statements made by the defendant pursuant to proffer letters.

16.    The parties agree that, in the event that the defendant breaches this agreement by committing new criminal conduct, the government will be required to only establish probable cause to believe that the defendant committed a new criminal offense for the Court to find the defendant in breach of the plea agreement.

17.    The parties agree that, should the Court find the government in breach of this plea agreement, the defendant may cancel this agreement and thus be released from the appellate and collateral attack waivers. The parties further agree that a breach of the plea agreement by the government will not automatically entitle the defendant to withdraw the guilty plea and, if the

8

defendant should seek to withdraw the guilty plea on the basis of such a breach, then the defendant will be required to file a motion pursuant to Rule 11(d).

## IX. THE DEFENDANT'S ACKNOWLEDGEMENTS

18. The defendant understands that the Court is neither a party to nor required to accept this agreement. However, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, if the Court accepts this agreement, the Court is bound by the sentencing recommendation set forth in Section III of this agreement.

19. The defendant acknowledges that the defendant authorized and consented to the negotiations between the government and the attorney for the defendant that led to this agreement.

20. The defendant understands that: (1) in pleading guilty, a duly authorized representative of the defendant may be required to make statements under oath; and (2) the government has a right to use against the defendant, in a prosecution for making false statements, any statement that the defendant makes. However, as the defendant understands, the government may not use as evidence against the defendant in any future proceeding involving the charges alleged in the Information or related offenses, the defendant's guilty plea if the Court permits the defendant to withdraw that guilty plea.

21. The defendant understands that if the defendant pleads guilty pursuant to this agreement and the Court accepts that guilty plea, the defendant will waive certain rights, namely: (1) the right to plead not guilty or to persist in a plea of not guilty; (2) the right to a jury trial; (3) the right to be represented by counsel—and if necessary to have the Court appoint counsel— at trial and at every other stage of the proceeding; and (4) the right at trial to confront and cross-examine adverse witnesses, to present evidence, and to compel the attendance of witnesses.

9

22.     The defendant understands: (1) the nature of each charge to which the defendant is pleading guilty; (2) the maximum and minimum penalties associated with each charge to which the defendant is pleading guilty, including fine, and a term of probation; (3) any applicable mandatory minimum penalty associated with a charge to which the defendant is pleading guilty; (4) any applicable forfeiture provision applicable to a charge to which the defendant is pleading guilty; (5) the Court's authority to order restitution; and (6) the Court's obligation to impose a special assessment.

23.     The defendant confirms that the entirety of any agreement between the defendant and the government is as set forth in this agreement and any addendum to this agreement and that the government has not made any promises to the defendant other than those contained in this agreement and any addendum to this agreement.  This agreement consists of 12 pages and 28 paragraphs, an addendum, and Attachment A, entitled Safety Compliance Plan, consisting of 9 pages.

24.     The defendant confirms that counsel has competently and effectively represented the defendant throughout the proceedings leading to the entry of a guilty plea.  The defendant is satisfied with such representation.

25.     The defendant enters this plea agreement and pleads guilty freely and voluntarily. That is, the defendant acts without being influenced by any threats, force, intimidation, or coercion of any kind.

26.     The defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Alabama and the United States Department of Justice's Environment and Natural Resources Division, but that the agreement does not bind any other

component of the United States Department of Justice, nor does it bind any state or local prosecuting authority.

## X. THE ATTORNEYS' ACKNOWLEDGEMENTS

27. The attorneys for the government and for the defendant acknowledge that this plea agreement (including the addendum and Attachment A) contain the entirety of any agreement between the parties and that the parties reached this plea agreement in accordance with the procedure set forth at Rule 11.

28. The attorney for the defendant confirms that the attorney for the defendant advised the defendant of: (1) the nature of the charges to which the defendant is pleading guilty; (2) the penalties associated with those charges; (3) the rights that the defendant is waiving by pleading guilty; and (4) the possibility that statements made by the defendant under oath during a plea hearing may be used against the defendant in a subsequent prosecution for perjury or for making a false statement.

This 31st day of $August$ 2020.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY

Verne H. Speirs
Criminal Chief

Stephanie Billingslea
Assistant United States Attorney

11

JEFFREY BOSSERT CLARK
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL RESOURCES DIVISON
U.S. DEPARTMENT OF JUSTICE

Erica H. Pencak
U.S. Department of Justice Trial Attorney

Joon LLC d/b/a/ Ajin USA, Defendant
BY: Jae Ik Jang, Chief Financial Officer

William Espy
Attorney for the Defendant

12

**ATTACHMENT A**
**Safety Compliance Plan**

PURSUANT TO PLEA AGREEMENT

**United States v. Joon LLC d/b/a AJIN USA**

The following standards and requirements for a SAFETY COMPLIANCE PLAN ("SCP") have been prepared pursuant to the Plea Agreement between Joon LLC d/b/a AJIN USA ("AJIN") and the United States ("Government") filed in the United States District Court for the Middle District of Alabama. Compliance with all of the standards and requirements of the SCP is an essential term of the Plea Agreement and is a condition of Probation.

This SCP includes various provisions to ensure that the AJIN's auto parts manufacturing facility located at 1500 Country Road 177 in Cusseta, Alabama 36852 ("AJIN Facility") complies with all applicable requirements set forth by the Occupational Safety and Health Act ("OSH Act") and regulations promulgated pursuant to the OSH Act.

## A. DEFINITIONS

(1) "Affected Employee" has the meaning set forth in 29 C.F.R. 1910.147(b).

(2) "Appropriate Device(s)" means a Lockout Device, Tagout Device, and/or any other device necessary to disable Machinery in order to prevent injury to employees during Servicing or Maintenance.

(3) "AJIN Facility" means the auto parts manufacturing facility located at 1500 Country road 177 in Cusseta, Alabama 36852.

(4) "Authorized Employee" has the meaning set forth in 29 C.F.R. 1910.147(b).

(5) "Employee" means a person who works at the AJIN Facility, regardless of whether that person is a permanent employee, temporary employee, contractor, employed by AJIN, and/or employed by a temporary agency or other third party, and includes supervisors, managers, and team leaders.

(6) "Machinery" means machines and/or equipment that could harm employees due to unexpected energization or start up, or release of stored energy within the meaning of 29 C.F.R. 1910.147(a).

(7) "Lockout" and "Tagout" (collectively "LOTO") have the meaning set forth in 29 C.F.R. 1910.147(b).

1

(8) "Lockout Device," "Tagout Device," and "Energy Isolating Device" have the meaning set forth in 29 C.F.R. 1910.147(b).

(9) "Servicing or Maintenance" means workplace activities such as constructing, installing, setting up, adjusting, inspecting, modifying, and maintaining and/or servicing machines or equipment. These activities include lubrication, cleaning or unjamming of machines or equipment and making adjustments or tool changes, where the employee may be exposed to the unexpected energization or startup of the equipment or release of hazardous energy.

## B. APPLICABILITY/PURPOSE

(1) This SCP shall cover and apply to the AJIN Facility on the date of sentencing (as set out above) and at any time during the period of probation.

(2) The SCP is not intended to replace the regulations promulgated pursuant to the OSH Act, any Occupational Safety and Health Administration ("OSHA") guidance, or any other United States or state statute or regulation. The purpose of this SCP is to augment the requirements of existing law by increasing and improving training, inspections, reviews, and audits of the AJIN Facility; and require periodic reports to OSHA, the United States Probation Office for the Middle District of Alabama, the United States Attorney's Office for the Middle District of Alabama, the Environmental Crimes Section of the United States Department of Justice (collectively hereinafter "the United States") , and to ensure that AJIN is following the requirements of this SCP and all applicable OSH Act regulations and requirements.

## C. SAFETY COMPLIANCE MANAGER

(1) Within 30 days of sentencing, AJIN shall designate a senior manager or corporate officer as Safety Compliance Manager (hereinafter "SCM") and AJIN shall provide the name of the SCM to the United States. The SCM shall be responsible for coordinating with the Third Party Auditor (hereinafter "TPA"), as more fully described below; developing and implementing all of the procedures and systems required herein; establishing and implementing training programs; ensuring that inspections, reviews, and audits are carried out as required; and ensuring that all documents are properly maintained and that reports are made on a timely basis. All reports required under this SCP shall be prepared and/or reviewed by the SCM and signed under the penalty of perjury.

(2) The SCM position will be filled by an individual with a significant safety compliance background, who is thoroughly familiar with the requirements of this SCP, and is knowledgeable about all applicable OSH Act regulations and requirements. The SCM shall show at the time of appointment that he/she has been trained specifically in LOTO within the last 12 months and shall maintain an annual training certification in LOTO.

2

(3) Within 60 days of sentencing, AJIN shall ensure that all Employees have received a copy of this SCP and that this SCP is posted in a prominent place in the AJIN Facility. All Employees hired after this date shall be provided with a copy of the SCP as part of their orientation.

(4) Within 60 days of sentencing, AJIN shall establish a procedure that requires all Employees to cooperate fully with the SCM, the TPA, and the United States in carrying out the reviewing, auditing and oversight functions required by applicable law and this SCP, and that makes failure to so cooperate grounds for dismissal.

(5) The SCM shall be authorized to access all records and personnel for the purpose of ensuring compliance with this SCP. The SCM shall be authorized to implement all requirements of this SCP, and shall ensure that audits are carried out as required, that all documents are properly maintained and that reports are made on a timely basis to the TPA, and made available upon request by the United States.

(6) If the SCM believes AJIN is not supporting the SCM's efforts to implement this SCP, or is failing to comply with or enforce any applicable OSH Act regulation or requirement – *not limited to those regulations or requirements related to LOTO* – the SCM shall inform the TPA.

(7) AJIN agrees not to retaliate against the SCM for carrying out his/her duties to implement this SCP.

## D. THIRD PARTY AUDITOR

(1) Within 60 days of sentencing, AJIN shall submit to the Government a list of three qualified candidates for the TPA position along with its recommendation for approval of one of the candidates, from which the Government, in consultation with OSHA will select a candidate to serve as the TPA. To the extent practicable, AJIN will endeavor to submit candidates that have not provided auditing services to AJIN within the last calendar year. In the event that none of the candidates is found acceptable, or if the work of the TPA is unsatisfactory at any time, the Government may require that AJIN supply additional candidates and/or that additional candidates be recommended by OSHA. The Government reserves the right to reject any proposed TPA. All work performed by the TPA and its auditors must be certified as being accurate and truthful. The certification shall be made with the understanding that any false information knowingly submitted is subject to prosecution under 18 U.S.C. §1001.

(2) Qualifications. Qualified candidates for the TPA include individuals or firms that have staff capable of applying the most current International Standards Organization ("ISO") 45001 (Occupational Health and Safety) and 19011 (Guidelines for Auditing Management Systems) and have the following experience, expertise, and capabilities:

(a) expertise and competence in the regulatory programs under the OSH Act;

3

    (b)    experience in performing safety audits in industrial or manufacturing environments; and

    (c)    sufficient expertise and competence to assess whether AJIN has adequate policies, procedures, and equipment in place to ensure compliance with this SCP and to ensure regulatory compliance, correct non-compliance, and prevent future non-compliance.

    (d)    An individual who has experience performing safety audits in an automotive manufacture or robotics environment, and/or a Certified Safety Professional is preferred.

(3)    Contractual Independence. During the term of probation, the TPA shall not directly own any stock in AJIN; must have no other ongoing contractual or business relationship, other than that of the TPA, with AJIN; and may not seek or serve in other capacities with AJIN, unless first disclosed to the Government, and the Court, and unless expressly approved by the Government. The TPA must exercise independent judgment and ensure that the objectives set forth in this SCP are met. AJIN and the TPA shall notify the Government if any contractual relationships or proposed contractual relationships between AJIN and the TPA arise during the term of probation.

(4)    Functional Independence. The TPA shall function independently of AJIN, but may communicate with AJIN about the substance of its work. The TPA may consult with, but shall not receive or request approval in any form from any Employee of AJIN regarding the development, clearance, or evaluation of any document, report, or communication of any kind, whether draft or final, required by this SCP.

## E. LOTO POLICIES AND PROCEDURES

(1)    Within 60 days of sentencing, The SCM shall review, and if necessary, update, AJIN's LOTO policies and procedures to ensure that:

    (a)    Written LOTO procedures exist for every piece of Machinery;

    (b)    Supervisors', managers', and team leaders' responsibilities for ensuring enforcement of and compliance with the LOTO policies and procedures are clearly established;

    (c)    Disciplinary measures are set forth for any Employee who fails to follow LOTO policies and procedures, and for any supervisor, manager, or team leader who fails to fulfill his/her responsibilities for ensuring enforcement of and compliance with the LOTO policies and procedures; the disciplinary measure for an Employee's second failure to follow LOTO policies and procedures, or for a supervisor, manager, or team leader's second failure to fulfill his/her responsibilities for ensuring enforcement of and compliance with the LOTO policies and procedures, shall be termination;

(d) All LOTO policies and procedures comply with all applicable OSH Act regulations and requirements; and

(e) All LOTO policies and procedures are available in both English and Korean.

(2) Within 30 days of hiring the TPA, the SCM shall submit all of AJIN's LOTO policies and procedures to the TPA. If the TPA determines that the LOTO policies and procedures fail to comply with the requirements of this section or with applicable OSH Act regulations and requirements, within 30 days of the TPA's determination, the SCM shall make the necessary additions and/or revisions and resubmit the revised policies and procedures to the TPA.

(3) Within 30 days of finalization of the LOTO policies and procedures, every piece of Machinery shall have the LOTO procedures for that piece of Machinery posted at its entry point(s) and/or operator's station.

## F. DESIGNATION OF AFFECTED AND AUTHORIZED EMPLOYEES FOR LOTO PURPOSES

(1) The SCM shall compile a list of all Affected Employees and a list of all Authorized Employees. The list of Authorized Employees shall include the date upon which the Authorized Employee was provided with Appropriate Device(s), and the date upon which the Authorized Employee passed a LOTO proficiency test, described in Paragraph H.1.c., below.

(2) The SCM shall update the lists when Employees are added or removed from either list due to hiring, termination or other separation, and/or change of job duties.

(3) The SCM shall make both lists available to all Employees, so that Employees are aware if they are Affected Employees, Authorized Employees, or neither.

(4) Within 30 days after hiring the TPA, and on a quarterly basis thereafter, the SCM shall provide both lists to the TPA and shall make both lists available to the United States upon request.

## G. PROVISION OF LOCKOUT DEVICES

(1) Within 60 days of sentencing, the SCM shall ensure that AJIN has supplied all Authorized Employees with Appropriate Device(s). For all individuals who become Authorized Employees after this date, the SCM shall ensure that AJIN supplies Appropriate Device(s) to a new Authorized Employee before he/she performs service or maintenance on any Machinery.

(2) The SCM shall maintain records of all Employees who have received Appropriate

5

Device(s) and shall make such records available to the United States upon request.

## H. LOTO TRAINING

(1) Within 30 days of the finalization of all LOTO policies and procedures in accordance with Section E., above, the SCM shall ensure that all Affected [1] and Authorized Employees have been provided with copies of and trained on all of AJIN's LOTO policies and procedures. The training must be provided in English, Korean, and any other language necessary to ensure that all Affected and Authorized Employees are properly trained, and must include:

   (a) Classroom-style review of all LOTO policies and procedures; and

   (b) Hands-on demonstration of the machine- or equipment-specific LOTO procedures for any and all Machinery the Employee will operate and/or work in close proximity to; and

   (c) A proficiency test that covers both general LOTO policies and procedures and machine- or equipment-specific LOTO procedures. No Employee may be an Authorized Employee without passing the proficiency test.

(2) Within 30 days of the finalization of all LOTO policies and procedures in accordance with Section E., above, the SCM shall ensure that all managers, supervisors, and team leaders are trained on the roles and responsibilities they have for ensuring enforcement of and compliance with AJIN's LOTO policies and procedures.

(3) For all individuals who become Authorized or Affected Employees after the training described in Paragraph 1 of this Section has taken place, the SCM shall ensure that a new Authorized or Affected Employee does not begin operating or using any Machinery until undergoing all training described in Paragraph 1 of this Section, and/or any training otherwise required by OSHA regulations.

(4) For all individuals who become managers, supervisors, and team leaders after the training described in Paragraph 2 of this Section has taken place, the SCM shall ensure that the new managers, supervisors, and team leaders do not begin their supervisory or managerial duties until undergoing the training described in Paragraph 2 of this Section, and/or any training otherwise required by OSHA regulations.

(5) The SCM shall maintain detailed records of all training carried out pursuant to this section; shall provide such records to the TPA on a quarterly basis; and shall make such records available to the United States upon request.

---

[1] Affected Employees who are not Authorized Employees are not allowed to perform Servicing or Maintenance on Machinery. However, because they may be in the vicinity when such Servicing or Maintenance occurs, Affected Employees must receive this training for situational awareness.

## I. LOTO COMPLIANCE INSPECTIONS AND REPORTS

(1) Starting no later than 90 days after sentencing, for at least one hour per shift per week, the SCM shall perform LOTO Compliance Inspections in the areas of the AJIN Facility where Machinery is located to ensure compliance with AJIN's LOTO policies and procedures. The SCM shall document all violations of AJIN's LOTO policies and procedures, including but not limited to:

   (a) Any Employees performing Servicing or Maintenance on Machinery without following LOTO policies and procedures;

   (b) Any Employees who are not Authorized Employees performing Servicing or Maintenance on Machinery;

   (c) Any Authorized Employees who do not have Appropriate Device(s) on their person;

   (d) Any Employee who is operating or using any Machinery without having been trained on the LOTO procedures specific to that piece of Machinery; and

   (e) Any manger, supervisor, or team leader who observes a violation of a LOTO policy or procedure without taking action to stop the violation and discipline the Employee(s) in accordance with Paragraph E.1.c.

(2) The SCM shall also review one hour per shift per week of video footage captured by cameras located in the areas of the AJIN Facility where Machinery is located and document all violations of AJIN's LOTO policies and procedures.

(3) By no later than 15 days after the end of a calendar month, the SCM shall prepare a LOTO Compliance Report describing all violations of AJIN's LOTO policies and procedures documented during that calendar month – whether they were discovered during LOTO Compliance Inspections, video footage review, or by other means – including a description of the disciplinary action taken in response to those violations. If, in carrying out the LOTO Compliance Inspections or video footage review described in this section, the SCM or his/her designee identifies violations of OSHA regulations or requirements *unrelated to LOTO* that the SCM believes are not being addressed by AJIN, the SCM shall include in the LOTO Compliance Report a section describing "Other Non-LOTO Violations." The SCM shall maintain all LOTO Compliance Reports, transmit them to the TPA on a quarterly basis, and transmit them to the United States upon request.

(4) The SCM may delegate the performance of LOTO Compliance Inspections, video footage review, and/or the preparation of the LOTO Compliance Report to another individual, upon approval by the TPA. However, all LOTO Compliance Reports must

7

be signed by the SCM.

(5) At any time and without prior notice to AJIN, the TPA can conduct LOTO Compliance Inspections and review video footage. By no later than 60 days after the TPA is hired, and on at least a quarterly basis thereafter, the TPA shall conduct a LOTO Compliance Inspection without prior notice to AJIN.

## J. MECHANISM FOR EMPLOYEES TO REPORT SAFETY CONCERNS

(1) Within 60 days of the entry of the plea agreement, the SCM shall establish, publicize to all Employees, and post in a conspicuous place in the Facility a mechanism by which Employees may report (anonymously if the Employee so desires) any safety concerns – *not limited to concerns about LOTO* – and/or concerns that this SCP is not being followed. Employees hired after this date shall be provided with information about this mechanism as part of their orientation.

(2) The SCM shall review, investigate, and document in a timely fashion reports of safety concerns received from Employees and shall initiate, monitor, and document all actions taken as a result of such reports.

(3) The SCM shall maintain records of Employee reports and the actions taken as a result of such reports, shall provide these records to the TPA on a quarterly basis, and shall make these reports available to the United States upon request.

## K. TPA Audit Reports

(1) No later than 120 days after the TPA is hired, and on a semiannual basis thereafter, the TPA shall prepare and submit to the United States an Audit Report that addresses AJIN's compliance with this SCP, including but not limited to the following:

   (a) Whether AJIN's LOTO policies and procedures comply with all applicable OSH Act regulations and requirements and Section E of this SCP;

   (b) Whether AJIN is maintaining lists of Affected and Authorized employees in compliance with Section F of this SCP;

   (c) Whether all Authorized Employees have been provided with Appropriate Device(s) in compliance with all applicable OSH Act regulations and requirements and Section G of this SCP;

   (d) Whether AJIN is carrying out LOTO training in compliance with all applicable OSH Act regulations and requirements and Section H of this SCP;

   (e) Whether AJIN is carrying out LOTO Compliance Inspections and video footage review, and completing LOTO Compliance Reports in compliance

8

with all applicable OSH Act regulations and requirements and Section H of this SCP;

(f)     Any significant findings from LOTO Compliance Reports submitted pursuant to Section H of this SCP;

(g)     Whether Employees who have been found in violation of LOTO policies and procedures have been disciplined in accordance with the measures established pursuant to Paragraph E.1.c. of this SCP;

(h)     Any significant findings from any LOTO Compliance Inspections carried out by the TPA in accordance with Paragraph I.5 of this SCP;

(i)     Any Employee reports of safety concerns that the TPA does not believe have been adequately addressed in accordance with Paragraph J.2. of this SCP; and

(j)     Any violation of any OSH Act regulation or requirement – *including those not related to LOTO* – observed by the TPA, or brought to the TPA's attention by the SCM or through a report of an Employee concern, that has not been remedied by AJIN.

(2)     The TPA shall provide AJIN with a copy of all Audit Reports after they have been submitted to the United States.

## L. ENHANCED OSHA OVERSIGHT

(1)     If, based on any information provided to OSHA in Audit Reports or in documents requested by OSHA pursuant to this SCP, OSHA determines there are reasonable grounds to believe that a violation of a safety or health standard exits that threatens physical harm, or that an imminent danger exits, at the AJIN Facility:

(a)     AJIN shall allow OSHA personnel to inspect the AJIN Facility without a warrant and without advance notice, and OSHA may issue citations or take other lawful enforcement actions during such inspections;

(b)     OSHA will have access to and the right to require production of documents in the possession or control of AJIN, subject to limitations of privilege, which OSHA reasonably requires to determine AJIN's compliance with the OSH Act; and

(c)     OSHA will have the authority to interview any agent or employee of AJIN concerning any matter related to compliance with the OSH Act, subject to limitations of privilege. If requested by the agent or employee, the interview shall be private.